UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOEL SOSA,

                Plaintiff,

              v.

NEW YORK CITY HOSUING
AUTHORITY and IIT, INC.

                Defendants.

Civil Action No.: 22-CV-02460 (LGS)

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

*Lizabeth Schalet*

*The Legal Aid Society*
*199 Water Street*
*New York, NY 10038*

*Laura Sager*

*Washington Square Legal Services, Inc.*
*New York University School of Law*
*245 Sullivan St., 5th Fl.*
*New York, NY 10012*

*Attorneys for Plaintiff*

# Table of Contents

**I.     PRELIMINARY STATEMENT** ........................................................................ 3

**II.    STATEMENT OF FACTS** .............................................................................. 3

**III.   ARGUMENT** ................................................................................................... 5

   A.     Defendants Mischaracterize Mr. Sosa's Requests for Leave, Which Were Valid Under the FMLA and FFCRA ........................................................................................ 6

     *1.     Mr. Sosa's Requests for Telework Do Not Negate His Requests for Leave* ................ 6

     *2.     Mr. Sosa's Request for Leave Was Not Due to Fear of Contracting COVID-19* ......... 8

   B.     Mr. Sosa Has Sufficiently Alleged FMLA Claims Against Both IIT and NYCHA ........ 9

     *1.     The Facts Alleged in the Complaint Are Sufficient for Plausibly Finding Either Defendant to be the Primary Employer* .................................................................. 9

     *2.     Defendants Fail to Recognize that the Secondary Employer in a Joint Employment Relationship Will Be Held Liable for Interference with FMLA Rights.* ............................. 11

   C.     Mr. Sosa Has Pleaded Sufficient Facts for a Plausible Claim to Coverage Under the FFCRA ............................................................................................................ 13

     *1.     The FFCRA's Effective Date Does Not Preclude Mr. Sosa's Claims* ....................... 13

     *2.     Mr. Sosa is Not in Violation of the FFCRA Notice Requirement Because Defendants Did Not Inform Him of a Failure to Provide Notice/Documentation* ................................. 15

**IV.    CONCLUSION** ............................................................................................. 17

## I.    PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of Joel Sosa ("Mr. Sosa" or "Plaintiff") in opposition to the Motions to Dismiss filed by IIT, Inc. ("IIT" or "Defendant") and the New York City Housing Authority ("NYCHA" or "Defendant").

Mr. Sosa was employed  from June 11, 2018 to April 1, 2020 by IIT and NYCHA as joint employers. Compl. ¶ 4. Mr. Sosa was fired after attempting to take leave as the caregiver of three children, the oldest of whom suffers from a serious health condition, whose schools had closed for a COVID-19 related reason. Compl. ¶ 1. Mr. Sosa was entitled to take leave to care for his children pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq,* the Emergency Family and Medical Leave Expansion Act ("EFLMEA"), Division C of the Families First Coronavirus Response Act ("FFCRA"), FFRCA §§ 3101-3106, and the Emergency Paid Sick Leave Act ("EPSLA"), Division E of the FFCRA, FFCRA §§ 5101-5111.

As discussed below, Defendants' arguments in their Motions to Dismiss are contrary to the facts alleged in Plaintiff's Complaint and the relevant law. Mr. Sosa is entitled to relief under the FMLA, EFLMEA, and EPSLA, as alleged in the Complaint.

## II.    STATEMENT OF FACTS

On or about June 11, 2018, IIT hired Mr. Sosa and assigned him to work for NYCHA as a Contract Specification Writer full-time. Compl. ¶ 8. NYCHA determined Mr. Sosa's schedule, gave him tasks, set his pay, managed his work, and handled his requests for leave. Compl. ¶ 10. IIT handled payroll functions and issued Mr. Sosa paychecks and his W-2 tax form. Compl. ¶ 11.

Mr. Sosa is the primary caregiver for three children: Elai, Idan, and Asaf Sosa, who are 17 years old, 15 years old, and 12 years old, respectively. Compl. ¶ 12. Elai Sosa was born with Pectus Excavatum, a serious health condition that impacts his chest, lungs, and heart. Compl. ¶

3

13. Due to his serious health condition, Elai is unable to lift his body on his own and requires assistance with routine activities and full-time supervision. Compl. ¶ 13. NYCHA was on notice of Elai's condition from a previous leave Mr. Sosa had taken to care for his son. Compl. ¶ 14.

On March 3, 2020, the private school that Elai Sosa attends was closed due to the recent onset of COVID-19 in New York City. Compl. ¶¶ 15, 16. On March 15, 2020, the New York City public schools that Idan and Asaf attended also closed for COVID-19 related reasons. Compl. ¶ 18. Because of the school closures, Mr. Sosa, as their primary caretaker, needed to be home. Compl. ¶¶ 12, 17-18. In addition, Mr. Sosa needed to be home to care for Elai and monitor his serious health condition, for which he cannot remain unsupervised. Compl. ¶¶ 13, 17.

On about March 9, 2020, NYCHA supervisor Manikandan "Manny" Muthiah held a meeting and discussed how Mr. Sosa and his colleagues might have to start teleworking. Compl. ¶ 19. Mr. Sosa mentioned that he would want to telework due to his son's school closure and his other son's medical condition. Compl. ¶ 19. Despite having initially informed Mr. Sosa that he would be able to work from home, Mr. Muthiah told him and the others in his unit that they were not permitted to work remotely. Compl. ¶¶ 22-23. On March 23, 2020, Mr. Sosa contacted Stephanie Procyk at IIT about NYCHA's refusal to allow him to telework. Compl. ¶ 25. Ms. Procyk informed Mr. Sosa that he was entitled to leave pursuant to the FMLA and recommended that he speak with NYCHA about this option. Compl. ¶ 25. The next day, when speaking to Mr. Muthiah, Mr. Sosa again communicated his need to be at home due to his sons' school closures and Elai's serious health condition, to which Mr. Muthiah responded, "I don't care about your personal family problems, if you don't like it stay home and see what happens," which Mr. Sosa considered a threat. Compl. ¶ 26. Mr. Sosa then went to his second line supervisor Anthony

4

Marotta and asked him about taking family leave. Compl. ¶ 27. However, Mr. Marotta immediately dismissed Mr. Sosa. Compl. ¶ 27. Mr. Marotta later told Mr. Sosa that his failure to report to work in person would be considered a voluntary separation of service. Compl. ¶ 30. Mr. Sosa stopped in-person work after March 27, 2020, although he continued to communicate with Defendants via email in an attempt to work out a telework or leave arrangement. Compl. ¶¶ 29, 31. Mr. Sosa's supervisors rejected his requests. Compl. ¶ 30. On April 1, 2020, NYCHA notified IIT of its decision to fire Mr. Sosa. Compl. ¶ 32. IIT contacted Mr. Sosa on April 1 and informed him that his employment was terminated. Compl. ¶ 33. Mr. Sosa then brought this action against NYCHA and IIT as joint employers in violation of the FMLA, EFMLEA, and EPSLA.

### III.  ARGUMENT

NYCHA and IIT make similar arguments in their Motions to Dismiss and corresponding Memoranda of Law. First, both Defendants argue that Mr. Sosa's requests were actually for telework, not leave, which, they assert, does not constitute a proper basis for FFCRA. IIT additionally argues that Mr. Sosa requested leave due to concerns about contracting COVID-19, which is not covered under the FMLA. Second, both Defendants state that they should not face liability under the FMLA because the other Defendant is the primary employer. Third, both Defendants argue that Mr. Sosa's claims arose before the effective date of the FFCRA, barring his coverage. Fourth, both Defendants argue that Mr. Sosa did not comply with FFCRA notice requirements.

Motions to Dismiss are based upon the sufficiency of the allegations of the complaint. *Marquette Transportation Finance, LLC v. Soleil Chartered Bank,* 2020 WL 122975, at *4 (S.D.N.Y. Jan. 16, 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering these motions, the Court must accept all well-pleaded facts as true and resolve factual disputes in favor of the Plaintiff. *See L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 398 (S.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)). Because Mr. Sosa's complaint contains sufficient facts to assert plausible claims for relief against IIT and NYCHA, the Motions to Dismiss should be denied.

      A.    <u>Defendants Mischaracterize Mr. Sosa's Requests for Leave, Which Were Valid Under the FMLA and FFCRA</u>

          1.    *Mr. Sosa's Requests for Telework Do Not Negate His Requests for Leave*

Defendants improperly attempt to characterize Mr. Sosa's requests for leave as requests for telework.  IIT's Mem. of Law in Supp. at 5-6 (ECF. No. 31); NYCHA's Mem. of Law in Supp. at 3-4 (ECF. No 36). The allegations of the complaint establish that Mr. Sosa attempted, inter alia, to effectuate a telework arrangement as an alternative to taking leave so that he could continue working while taking care of his children, one of whom had a serious health condition for which he could not be left alone, and all of whose schools had closed due to COVID-19. Compl. ¶¶ 16, 18-19, 26, 29. Although NYCHA initially told Mr. Sosa that he would be able to telework, Defendants later made clear that Mr. Sosa could not perform his job remotely. Compl. ¶¶ 22-23. Consequently, because Mr. Sosa was unable to perform his job duties from home, he began requesting the leave he was entitled to under the FFCRA and FMLA. Compl. ¶¶ 25-29. When Mr. Sosa ceased coming to work, he wrote his supervisors discussing the needs of his children and requesting to "be considered for a return to work," indicating a request for leave to care for his children. Compl. ¶ 29.

Critically, *Collazo v. Ferrovial Construcción,* cited by both Defendants, is distinguishable from the present case. The Plaintiff in *Collazo* requested and was granted a hybrid work accommodation in which she split her work responsibilities between in-office and remote work. *Collazo v. Ferrovial Construcción PR, LLC,* 2021 WL 4482268, at *2 (D.P.R. Sept. 30, 2021). In its opinion, the District of Puerto Rico emphasized that an ability to telework precludes coverage under the EPSLA and the EFMLEA. *Id.* at *7-8 ("However, in order to qualify for said leave, both the EPSLA and the EFMLEA require for the employee to be unable to work or telework in order to tend to a child whose school is closed due to a public emergency in relation to the COVID-19 Pandemic."). The Court found that because the Plaintiff only requested a hybrid telework accommodation and this request was approved, she had not requested leave pursuant to the FFCRA. *Id.* at *7-8. Unlike the Plaintiff in *Collazo,* Mr. Sosa was unable to telework: NYCHA informed Mr. Sosa multiple times that he was not permitted to perform his job remotely. Compl. ¶¶ 23, 30. Because Mr. Sosa was unable to work from home or in person due to his need to take care of his children whose school had closed due to COVID-19, he did qualify for both the EPSLA and the EFMLEA and appropriately requested leave, not a hybrid accommodation as did the plaintiff in *Collazo.* Compl. ¶ 29.

Mr. Sosa's continued openness to telework does not negate his requests for leave. In fact, the Department of Labor ("DOL") interpreted the FFCRA to "encourage employers *and employees* to implement highly flexible telework arrangements that allow employees to perform work. . . while tending to family and other responsibilities, such as teaching children whose schools are closed for COVID-19 related reasons." Paid Leave Under the Families First Coronavirus Response Act, 85 Fed. Reg. 19326, 19328 (Apr. 6, 2020) (emphasis added). By requesting to work remotely before and during his requests for leave, Mr. Sosa was engaging in

the cooperative telework discussions that the FFCRA encourages. Therefore, Mr. Sosa's FFCRA leave requests should not be invalidated because he simultaneously indicated a willingness to instead work remotely.

2.    *Mr. Sosa's Request for Leave Was Not Due to Fear of Contracting COVID-19*

IIT additionally argues that Mr. Sosa's requests were due to a "fear of contracting Covid" and did not qualify for FMLA leave. IIT's Mem. of Law in Supp. at 3 (ECF. No. 31). IIT mischaracterizes Mr. Sosa's reasons for leave, which are clear from the Complaint.

Mr. Sosa requested leave in order to care for his son who has Pectus Excavatum, which is permitted under the FMLA. The FMLA entitles employees to take leave in order to care for a child with "a serious health condition". 29 USC § 2612(a)(1)(C). The Complaint describes Elai Sosa's serious health condition in detail. Compl. ¶ 13, 17. Though Mr. Sosa referenced his fear of contracting COVID-19, this was not his reason for requesting leave, but rather the reason for his request to telework. *See* Compl. ¶ 26. Throughout Mr. Sosa's leave discussions with Defendants, he referenced Elai's serious health condition and Mr. Sosa's need to tend to and supervise him. Compl. ¶¶ 19, 26-29. Further, NYCHA had been on notice about Elai Sosa's serious health condition before this instance. Compl. ¶ 14. The Complaint clearly shows that Mr. Sosa requested leave, to care for his son with a serious health condition, which is a covered reason under the FMLA.

B.      Mr. Sosa Has Sufficiently Alleged FMLA Claims Against Both IIT and NYCHA

     1.      *The Facts Alleged in the Complaint Are Sufficient for Plausibly Finding Either Defendant to be the Primary Employer*

IIT and NYCHA each seek to dismiss Mr. Sosa's claims against them on the grounds that they are not the primary employer in their joint employment relationship. IIT's Mem. of Law in Supp. at 2-3 (ECF. No. 31); NYCHA's Mem. of Law in Supp. at 3 (ECF. No 36). To determine primary/secondary status, Courts analyze "the entire relationship in its totality", paying focused attention to which entity has the authority/responsibility to:

     (i)     Hire and fire the employee
     (ii)    Assign/place the employee
     (iii)   Make payroll
     (iv)   Provide employment benefits

29 C.F.R. § 825.106(c). A complainant need not show that a particular employer controls all these factors. *Quintana v. City of Alexandria*, 692 Fed. Appx. 122, 126 (4th Cir. 2017) ("It is not fatal to [plaintiff]'s complaint that all factors do not strongly indicate that the City is her primary employer.").

Temporary placement agencies are usually found to be the primary employer in joint employer relationships; however, Professional Employer Organizations ("PEO"s) are more likely to be the secondary employer. 29 C.F.R. § 825.106(c). A PEO, as defined in the regulations, is a company that "contracts with client employers to perform administrative functions such as payroll, benefits, regulatory paperwork, and updating employment policies." 29 C.F.R. § 825.106(b)(2). Because the allegations in the Complaint do not establish whether IIT falls within the definition of a temporary staffing agency or PEO, discovery would be needed in order to decide that question. However, regardless of whether IIT was a temporary staffing agency or a PEO, the question for the court is whether the allegations in the complaint with respect to the

9

factors listed in  29 C.F.R. § 825.106(c) are sufficient for a plausible claim against either IIT or NYCHA that it was the primary employer, and thus are sufficient to withstand both parties' motion to dismiss on that ground.  *See Boyed v. Dana Inc*., 2017 WL 1179058, at *2-3(N.D. Ohio Mar. 30, 2017) (analyzing the 29 C.F.R. § 825.106(c) factors).

IIT initially hired Mr. Sosa and it is plausible to find that IIT made the final decision to fire Mr. Sosa, based on NYCHA's reporting to IIT and IIT's notification of such to Mr. Sosa. Compl. ¶¶ 8, 32-33; *see Cuellar v. Perma-Temp Pers. Servs., Inc*., 2011 WL 13127948, at *3, 6 (S.D. Tex. Dec. 9, 2011), aff'd sub nom. *Cuellar v. Keppel Amfels, L.L.C*., 731 F.3d 342 (5th Cir. 2013) (finding that a temporary staffing agency shared the power to fire, even when its client employer made the substantive decision). IIT assigned Mr. Sosa to work full-time at NYCHA. Compl. ¶ 8; *see id.,* at *6 (finding that a temporary staffing agency's initial decision to place an employee weighed in favor of finding them to be the primary employer). Lastly, IIT managed Mr. Sosa's payroll, which included issuing his paychecks and W-2 form. Compl. ¶ 11; *see Borders v. Goodyear Dunlop, N.A.,* 2020 WL 210056, at *4 (W.D.N.Y. Jan. 14, 2020) (finding that having a worker on an employer's payroll can be evidence that it is the primary employer). As the Complaint alleges, IIT is a staffing agency. Compl. ¶ 6. The general rule that temporary staffing agencies are the primary employer can add "conclusive weight to the result reached via that section's factors." *Boyed,* 2017 WL 1179058, at *2.

The allegations of the Complaint  are also sufficient for a plausible claim that NYCHA is the primary employer. Though IIT notified Mr. Sosa of his firing, NYCHA made the actual decision to end his employment. Compl. ¶¶ 30-34. Further, NYCHA threatened Mr. Sosa with employment termination before the decision was made. Compl. ¶¶ 26-30; *see Borders,* 2020 WL 210056, at *1 (reasoning that threats of termination can be evidence of an ability to fire within a

10

29 C.F.R. 825.106 analysis). Furthermore, there is evidence that NYCHA provided benefits to Mr. Sosa. When Mr. Sosa had previously taken leave due to his son Elai's serious health condition, a reason covered by the FMLA, he had discussed the condition with NYCHA supervision and NYCHA granted this leave. Compl. ¶ 14. In addition, when Mr. Sosa spoke to Ms. Procyck at IIT, she advised him to speak with NYCHA about taking FMLA leave, showing that IIT believed that NYCHA was the employer who provided benefits within their joint employment relationship. Compl. ¶ 25; *see also Grace v. USCAR,* 521 F.3d 655, 667 (6th Cir. 2008) (considering which employer the employee originally requested leave from to be relevant in establishing a primary employer). Lastly, IIT is named as a PEO in the Complaint. Compl. ¶ 6. This would support the general rule that the client employer, here NYCHA, would be the primary employer. 29 C.F.R. § 825.106(c).

Thus, it is clear that the Complaint alleges sufficient facts plausibly supporting a finding of primary status for either IIT or NYCHA. Based on the uncertainty on this issue, Defendants' Motions should be dismissed, and discovery should proceed to clarify the relationship between the two joint employers. *See Voltaire v. Home Service Systems*, 823 F.Supp.2d 77, 98 (E.D.N.Y. 2011) (denying an employer's motion to dismiss when it was unclear from the evidence which employer had power over hiring/firing, payment, and employee conduct).

2.    *Defendants Fail to Recognize that the Secondary Employer in a Joint Employment Relationship Will Be Held Liable for Interference with FMLA Rights.*

Regardless of which Defendant the Court determines is the primary and secondary employer, Mr. Sosa has valid claims against both IIT and NYCHA under the FMLA. Pursuant to federal regulations, joint employers have different duties under the FMLA based on their status

11

as the primary or secondary employer. 29 C.F.R. § 825.106(c). As IIT and NYCHA's Memoranda state, the primary employer is responsible for restoring an employee, providing leave, and providing benefits. 29 C.F.R. §§ 825.106(c)-(e). The secondary employer has the duty to accept the returning employee as long as it continues to use the temporary staffing agency and the agency chooses to place the employee with the client employer. 29 C.F.R. § 825.106(e).

In addition, in a joint employment relationship, the secondary as well as the primary employer is prohibited from interfering with an employee's exercise of their FMLA rights and from "discharging or discriminating against an employee for opposing a practice which is unlawful under FMLA." 29 C.F.R. § 825.106(e); *see* 29 C.F.R. § 285.220; *see also* 29 U.S.C. § 2615(a).

The circuit courts that have addressed the issue have held that being a joint employer does not excuse a business' prohibited activity, irrespective of their status as primary/secondary. *Quintana*, 692 Fed. Appx. at 127 (4th Circuit) ("29 U.S.C. § 2615(a)(1)-(2) prohibits interference and retaliation by any employer, including secondary employers."); *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013) ("Just as a primary employer may not interfere with, or retaliate on account of, an employee's exercise of FMLA rights, neither may a secondary employer."); *Grace v. USCAR,* 521 F.3d 655, 667 (6th Cir. 2008) ("[W]hen an eligible employee takes leave, the regulations ensure that *both* the primary and secondary employers honor the decision and do not engage in retributory action. . . .") (emphasis in original). Thus, regardless of which defendant was the primary employer, the plaintiff has a plausible FMLA interference claim against the other defendant, as the secondary employer. Both parties' Motions to Dismiss for failure to state a claim under the FMLA should therefore be denied.

C.    Mr. Sosa Has Pleaded Sufficient Facts for a Plausible Claim to Coverage Under the FFCRA

1.    The FFCRA's Effective Date Does Not Preclude Mr. Sosa's Claims

NYCHA and IIT both argue that Mr. Sosa's claims under the FFCRA are barred by the effective date of those statutes, mistakenly contending that employees were not entitled to leave under FFRCA until April 2, 2020, the day after Mr. Sosa was fired. IIT's Mem. of Law in Supp. at 4 (ECF. No. 31); NYCHA's Mem. of Law in Supp. At 6-7 (ECF. No 36). Their memoranda cite 29 C.F.R. §826.10(b)(1), issued on April 6, 2020, which stated that the rule "is effective from April 2, 2020, through December 31, 2020" and "operational on April 1, 2020." Paid Leave Under the Families First Coronavirus Response Act, 85 Fed. Reg. 19326, 19349 (Apr. 6, 2020).

That regulation does not explain the distinction between the terms "effective" and "operational," but other DOL regulations establish that employees' entitlement to rights and employers' obligations under the FFCRA begin on April 1, 2020. *Id.,* at 19342 ("The Department is bypassing advance notice and comment because of the exigency created by sections 3106 and 5108 of the FFCRA, *which go into effect on April 1, 2020*, and expire on December 31, 2020.") (emphasis added); *see id.* at 19334 (discussing a hypothetical in which an employee is eligible to take leave under EFMLEA on April 1, 2020); *see also id.,* at 19350 (to be codified at 29 C.F.R. 826.23(a)) ("An Eligible Employee is entitled to take up to twelve workweeks of Expanded Family and Medical Leave during the period *April 1, 2020* through December 31, 2020." (emphasis added).[1] Moreover, DOL has stated explicitly that the FFCRA

---

[1] Though the April 6, 2020 Rule stated that an employee is eligible to take leave from April 2, 2020 to December 31, 2020, this provision was corrected on April 10, 2020 to reflect a start date of April 1, 2020. *Compare* Paid Leave Under the Families First Coronavirus Response Act, 85 Fed. Reg. 19350 (Apr. 6, 2020) (to be codified at 29 C.F.R. § 826.70(e)) (originally specifying a leave period from April 2, 2020 to December 31, 2020); *with* Paid Leave Under the Families First Coronavirus Response Act; Correction, 85 Fed. Reg. 20156, 20158 (April 10, 2020) (to be codified at 29 C.F.R. § 826.70(e)) (correcting the eligible leave period to span from April 1, 2020 to December 31, 2020).

was fully in force starting on April 1, 2020. *Families First Coronavirus Response Act: Questions and Answers,* U.S. DEP'T. LAB., WAGE & HOUR DIV.,

https://www.dol.gov/agencies/whd/pandemic/ffcra-questions#104 (last accessed August 2, 2022) ("The obligation to provide FFCRA leave applies from the law's effective date of April 1, 2020, through December 31, 2020.").

Moreover, as Plaintiff's Pre-Motion Letter showed, on April 1, 2020, NYCHA itself issued a public update to its Covid-19 leave policy, stating  that employees were entitled to leave under FFRCA as of that date. Pl.'s Letter Resp. in Opp'n to Mot., dated May 31, 2022 (ECF No. 23) (Citing *https://www.osaunion.org/online/coronavirus/NYCHA%204-1-20leave.pdf* (last accessed May 22, 2022)).

The cases cited in Defendants' briefs do not support their contention on this point. Both Defendants cite *Milman v. Fieger & Fieger* to support their argument that the FFCRA cannot provide protection when the firing occurred before the law's effective date. In *Milman*, the Court found that Plaintiff could not be covered under the FFCRA because he was fired on March 18, 2020, well before the statute's provisions were in effect. *Milman v. Fieger & Fieger, P.C.*, 542 F. Supp. 3d 604, 611 (E.D. Mich. 2021). Here, Mr. Sosa was fired on April 1, 2020, the date when employers became obligated to provide leave, which would put Mr. Sosa under its protections. Because Mr. Sosa was fired on the effective date of employers' obligations under the FFCRA, he has effective claims against Defendants.

Though Mr. Sosa may not be eligible for lost wages due to COVID-19 prior to April 1, 2020, he is entitled to lost wages from April 1, 2020 onwards. Even if Mr. Sosa began his leave before the FFCRA went into effect, his eligibility would have renewed on the statute's operational date of April 1, 2020. *See Colombe v. SGN, Inc.,* No. 20-cv-374, 2021 WL 1198304,

at *4 (E.D. Ky. Mar. 29, 2021) (accepting that, even if the Plaintiff was not eligible for FFCRA

protection before the statute was in effect, the Plaintiff's eligibility "ripened" once the FFCRA

was in force). In addition, Mr. Sosa may be eligible for coverage prior to April 1, 2020 for non-

financial provisions of the FFCRA. *See* Paid Leave Under the Families First Coronavirus

Response Act, 85 Fed. Reg. 19326, 19357 (Apr. 6, 2020) (to be codified at 29 C.F.R. 826.160)

("However, no Employer is obligated or required to provide, and no Employee has a right to

entitlement to receive, *any retroactive reimbursement or financial compensation* through Paid

Sick Leave or Expanded Family and Medical Leave for any unpaid or partially paid leave *taken*

*prior to April 1, 2020,* even if such leave was taken for COVID-19-related reasons.") (emphasis

added); *see also Jones v. Eastern Airlines,* 2021 WL 2456650, at *7 (E.D. Pa. June 16, 2021)

(finding that Plaintiff was plausibly entitled to relief under the non-financial provisions of the

FFCRA, even though she was fired on March 27, 2020, and denying the associated motion to

dismiss). Because Mr. Sosa's complaint plausibly alleges his entitlement to leave under FFCRA

before, on, or after April 1, 2020, the Court should deny the Defendants' Motions to Dismiss.

> 2.    *Mr. Sosa is Not in Violation of the FFCRA Notice Requirement Because*
> *Defendants Did Not Inform Him of a Failure to Provide*
> *Notice/Documentation*

Defendants argue that the complaint should be dismissed because it does not allege that

he provided the requisite notice prior to taking leave. IIT's Mem. of Law in Supp. at 6 (ECF. No.

31); NYCHA's Mem. of Law in Supp. At 7-8 (ECF. No 36).  Defendants cite no authority for the

proposition that such allegations are essential to establish a plausible claim under the statute.

However, even if allegations on this issue were required for a plausible pleading,

Defendants' argument must fail. The  Regulation that they cite states:

> Notice may not be required in advance and may only be required
> after the first workday (or portion thereof) for which an Employee
> takes Paid Sick Leave or Expanded Family and Medical Leave.
> After the first workday, it will be reasonable for an Employer to
> require notice as soon as practicable under the facts and
> circumstances of the particular case.

Paid Leave Under the Families First Coronavirus Response Act, 85 Fed. Reg. 19326, 19354 (Apr. 6, 2020) (to be codified at 29 CFR § 826.90(b))[2]. For this reason, Mr. Sosa did not violate any regulatory requirement requiring notice prior to his leave.

Other regulations, however, do require an employee to provide certain *documentation* prior to leave. *See id.,* at 19355 (to be codified at 29 C.F.R. 826.100(a)) ("An Employee is required to provide the Employer documentation containing [specified information] prior to taking Paid Sick Leave under the EPSLA or Expanded Family and Medical Leave under the EFMLEA."). However, the Southern District of New York severed and vacated this requirement in *New York v. United States Department of Labor*. In its decision, this Court held that the provision requiring documentation prior to leave is in direct conflict with the FFCRA, and the DOL exceeded its authority in creating this requirement. *New York v. United States Department of Labor*, 477 F.Supp.3d 1, 17-18 (S.D.N.Y. 2020). This Court determined that the temporal requirement could be severed and vacated from the rest of the Final Rule.[3] Because the Kentucky

---

[2] When an employee takes leave in order to care for a child whose school is closed due to COVID-19 related reasons, "if that leave was foreseeable, an Employee shall provide the Employer with notice of such Paid Sick Leave or Expanded Family and Medical Leave as soon as practicable". Paid Leave Under the Families First Coronavirus Response Act, 85 Fed. Reg. 19326, 19354 (Apr. 6, 2020) (to be codified at 29 CFR § 826.90(a)(2)).

[3] The Court vacated several other portions of the rule, but none other which are relevant to the current Motions. *See New York,* 477 F.Supp.3d at 18 ("The following portions, and only the following portions, of the Final Rule are therefore vacated: the work-availability requirement; the definition of "health care provider"; the requirement that an

District Court in *Colombe,* cited by NYCHA in its argument on this point, made its decision relying on the validity of the temporal aspect of the documentation provision, it is inapplicable to the present case. *Colombe*, 2021 WL 1198304, at *4.[4] For these reasons, Defendants' argument that Mr. Sosa failed to provide notice prior to his leave fails. Mr. Sosa was under no obligation to provide documentation substantiating his need for leave in order for his leave to be approved.

Finally, even if Mr. Sosa did not provide the required information after he began his leave, he still qualifies for protection under the FFCRA since the regulations make clear that "the employer should give him or her notice of the failure and an opportunity to provide the required documentation. . . ." Paid Leave Under the Families First Coronavirus Response Act, 85 Fed. Reg. 19326, 19365 (Apr. 6, 2020) (to be codified at 29 CFR 926.90(a)(2)). Neither Defendant informed Mr. Sosa of any alleged failure to give proper notice, thus never gave him the required opportunity to provide the documentation. For all these reasons, Defendants' argument must fail.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Defendants' Motions to Dismiss the Complaint be dismissed in their entirety.

Dated: New York, NY
August 10, 2022                                                    THE LEGAL AID SOCIETY

Twyla Carter, Attorney-in-Chief
By:
Lizabeth Schalet, Of Counsel
*199 Water Street*
*New York, NY 10038*

*Laura Sager*

---

employee secure employer consent for intermittent leave; *and the temporal aspect of the documentation requirement, that is, the requirement that the documentation be provided before taking leave*." (emphasis added).
[4] In addition, the Court refused to apply the FFCRA to the Plaintiff because the quarantine instruction under which she attempted to qualify was not valid. *Colombe*, 2021 WL 1198304, at *4-5.

*Washington Square Legal Services,*
*Inc.*
*New York University School of Law*
*245 Sullivan St., 5th Fl.*
*New York, NY 10012*